**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

| | |
|---|---|
| WEST COAST PRODUCTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 5:12-cv-00277-RS-EMT |
| ) | |
| DOES 1–581, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**DOE 9'S MOTION TO QUASH WITH MOTION FOR PROTECTIVE ORDER,**
**MOTION TO DROP DOE 9 AS A PARTY, AND MOTION TO RECONSIDER ORDER**
**WITH INCORPORATED MEMORANDUM OF LAW**

COMES NOW Defendant "Doe 9,"[1] identified by Plaintiff only as the accountholder for IP Address **98.228.238.130**, by and through the undersigned attorney, and, pursuant to Rules 12(b), 26, and 45, Federal Rules of Civil Procedure, moves this Honorable Court to **ISSUE A PROTECTIVE ORDER** and **QUASH** the subpoena seeking Doe 9's subscriber information; **RECONSIDER** its Order granting Plaintiff leave to seek such information; and, pursuant to Rule 21, **DROP** Doe 9 as a party or **SEVER** the case; and **DISMISS** the claims for improper venue or Plaintiff's lack of Plaintiff's capacity to sue in the state of Florida.

_____

[1] Doe 9 and the undersigned attorney are making a special, limited appearance only; this motion is not to be construed as a general appearance under Local Rule 11.1 or by Doe 9, who has not been subject to service of process in this action, or the undersigned attorney.

<u>**CONTENTS OF THIS MOTION**</u>

INTRODUCTION ............................................... **2**

ANALYSIS ................................................... **3**

I.   The subpoena is procedurally defective ................ **3**

II.  Doe 9 resides outside the state of Florida ............ **4**

III. Plaintiff improperly pleads personal jurisdiction ...... **6**

IV.  Doe 9 is wrongly joined and should be dropped .......... **9**

V.   The Court should reconsider its order (Doc. 6) ........ **17**

VI.  Plaintiff does not seek Doe 9's information for actual
     litigation .......................................... **20**

CONCLUSION ................................................. **24**

<u>**INTRODUCTION**</u>

Plaintiff, WEST COAST PRODUCTIONS, INC., produces pornographic videos such as *Anal Size My Wife #3*, *Black Prison Lesbians*,[2] and the obscene film at bar: ***Teen Anal Nightmare 2***. This case is "part of a nationwide blizzard of civil actions brought by purveyors of pornographic films alleging copyright infringement by individuals using a computer protocol known as BitTorrent." *In Re: BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765, 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012).

---

[2] *See* West Coast Production's website at http://www.wcpclub.com/dvd.html

**ANALYSIS**

## I.   **The Subpoena is Procedurally Defective**

First, the subpoena should be quashed because it is defective on its face pursuant to Rule 45(a)(2)(c).  On July 19, 2012, in a nearly identical case filed by the same Plaintiff's attorney, the Middle District of Florida quashed subpoenas because said subpoenas were "procedurally defective" for being issued by the wrong judicial district. *Celestial, Inc. v. Does 1-378*, 2:12-cv-00083-UA-DNF (M.D. Fla. 2012) [Doc 082] (followed by *Celestial, Inc. v. John Does 1-252*, 2:12-CV-82-FTM-99DNF, 2012 WL 5052315 (M.D. Fla. Sept. 10 2012) *report and recommendation adopted,* 2:12-CV-82-FTM-99DNF, 2012 WL 5050136 (M.D. Fla. Oct. 18, 2012); *see also Nu Image, Inc. v. John Does 1-3932*, 2:11-CV-545-FTM-29, 2012 WL 3292423 (M.D. Fla. Aug. 10 2012) *report and recommendation adopted sub nom. Nu Image, Inc. v. Does 1-3932*, 2:11-CV-545-FTM-29, 2012 WL 3940144 (M.D. Fla. Sept. 10 2012) (quashing subpoenas on Comcast issued out of the Middle District of Florida).

Similarly, the subpoena seeking Doe 9's personally identifying information (copy enclosed with Doe 9's Declaration at **Exhibit "1"**), is also issued by the wrong district, which, here is the Northern District of Florida.  "A subpoena for production and inspection of documents, if separate from a

subpoena commanding a person's attendance, must be issued by the court for the district where the production or inspection is to be made." *Tracfone Wireless, Inc. v. Riedeman*, 606-CV1257-ORL-18JGG, 2007 WL 191651 (M.D. Fla. 2007) (citing Fed.R.Civ.P. 45(a)(2)(C)). Because the subpoena requires Comcast, located in Moorestown, New Jersey, to produce Doe 9's personal, private, and possibly privileged information to a location in Naples, Florida, which is far more than 100 miles away, the subpoena must be quashed under Rule 45(c)b.

## II.  Doe 9 resides outside the state of Florida.

Next, because this Court lacks personal jurisdiction over Doe 9, who resides in the state of Illinois, the subpoena should be quashed and the claims against Doe 9 dismissed. As is shown in the attached declaration, Doe 9 has never resided in Florida and has no continuing or minimum contacts with Florida. Furthermore, a geolocation report on Doe 9's IP address, **98.228.238.130**, reveals Doe 9's location to be in or near **Arlington Heights, Illinois.** "[W]hile these geolocation services are not 100% accurate, these services can place a user no farther away than a city that borders the user's actual location." *Nu Image, Inc. v. Does 1-23,322*, 799 F.Supp.2d 34, 41 (D.C. Dist. 2011) (referring to the geolocation service at whatismyipaddress.com, which is the one used in the exhibit

attached to Doe 327's declaration); *see also Digital Sins, Inc. v. Does 1-245*, 2012 WL 1744838 (S.D.N.Y. May 15, 2012) (recognizing the acceptance of publicly available IP locators to make out a *prima facie* case of personal jurisdiction).

This case is very similar to cases filed earlier this year by film company Nu Image, Inc. in the Middle District of Florida, by and through the same attorney who filed the instant action.  Similar to Doe 9 here, Doe 826 in Nu Image attached a declaration asserting that he or she was not a resident of Florida, and the Court granted Doe 826's motion to quash. *Nu Image, Inc. v. Does 1-3922*, 2:11-CV-545-FTM-29SP, 2012 WL 1231930 (M.D. Fla. April 12, 2012).  About a week later, the Court made the same conclusion as to other Defendants who also resided outside Florida: Doe 897, 2012 WL 1389030 (M.D. Fla. April 20, 2012), and Doe 313, 2012 WL 1382251 (M.D. Fla. April 20, 2012), granting their motions to quash.

Therefore, in accordance with the analysis in the above-cited *Nu Image* orders, because Doe 9 has always resided outside Florida and has no minimum contacts with the forum state, this Court should quash the subpoena because it cannot confer personal jurisdiction over Doe 9.

Furthermore, as any further discovery requests for information relating to Doe 9 would create an undue burden or

expense for Doe 9, and because Doe 9 has already incurred an undue burden and expense of attorney fees in having to move to quash this wrongfully served subpoena, good cause exists for this Court to issue a protective order forbidding the disclosure of Doe 9's identity and contact information and to award reasonable attorney fees to Doe 9. Finally, as Doe 9 is improperly included in the suit, the claims against him or her should be dismissed for lack of personal jurisdiction.

## III. __Plaintiff insufficiently pleads personal jurisdiction__

Next, the subpoena should be quashed and the instant case dismissed because of the Plaintiff's failure to properly plead personal jurisdiction. This very same issue was analyzed in detail by the Middle District of Florida in *Nu Image v. Does 1-3932*, which was filed by the same Plaintiff as who represents the instant Plaintiff, and which features a nearly identical Complaint. 2:11-CV-545-FTM-29, 2012 WL 1890829 (M.D. Fla. May 24, 2012) (quashing subpoenas for several John Does because the "allegations in the Complaint are insufficient to allege personal jurisdiction over any defendant under the Florida long-arm statute and the Due Process Clause"). Shortly afterward, the Middle District had the same holding in another case filed by Nu Image, *Nu Image, Inc. v. Does 1-2515*, 2:12-CV-109-FTM-29, 2012 WL 3042933 (M.D. Fla. July 16, 2012) *report*

*and recommendation adopted*, 2:12-CV-109-FTM-29, 2012 WL 3043098 (M.D. Fla. July 25, 2012).

As the Middle District provided, "[a] court's personal jurisdiction over a defendant is not a meaningless gesture," and, "A court without personal jurisdiction is powerless to take further action." *Nu Image*, 2:11-CV-545-FTM-29, 2012 WL 1890829 *2 (M.D. Fla. May 24, 2012) (quoting *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1214 n. 6 (11th Cir. 1999)).

In the instant case, the subpoena for Doe 9's subscriber information should be quashed and Plaintiff's complaint dismissed because, even where the complaint is construed in the most favorable light to Plaintiff, on its face it fails to sufficiently plead personal jurisdiction. "The plaintiff is required to plead sufficient material facts to form a basis for in personam jurisdiction." *Walack v. Worldwide Machinery Sales, Inc.,* 278 F. Supp. 2d 1358, 1364 (M.D. Fla. 2003). To establish personal jurisdiction, the Plaintiff must satisfy **both** (1) Florida's long-arm jurisdictional statute, Fla. Stat. § 48.193, and (2) constitutional notions of due process. *Id.* at 1365 (citing *See Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990)). The Middle District of Florida conducted this same two-part analysis on the Complaint filed in *Nu Image, Inc. v. Does 1-3932* and quashed subpoenas because it found Nu Image's

Complaint insufficient to allege personal jurisdiction. 2:11-CV-545-FTM-29, 2012 WL 1382251 *2 (M.D. Fla. April 20, 2012) (citing *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009)).

Like Nu Image, Inc., West Coast Productions has "failed to allege sufficient facts in the Complaint to make out a prima facie case against Defendant." *Nu Image, Inc. v. Does 1-3932*, 2:11-CV-545-FTM-29, 2012 WL 1900151[3] *2 (M.D. Fla. May 9, 2012) *report and recommendation adopted,* 2:11-CV-545-FTM-29, 2012 WL 1890829 (M.D. Fla. 2012) (citing *Future Tech. Today, Inc. v. OSF Healthcare Sys.,* 218 F.3d 1247, 1249 (11th Cir. 2000)). Furthermore, like in *New Image*, "the tenuous connection to the State of Florida in this case does not support jurisdiction under the Constitution." 2012 WL 1890854 *6 (M.D. Fla. May 10, 2012) *report and recommendation adopted,* 2:11-CV-545-FTM-29, 2012 WL 1890829 (M.D. Fla. May 24, 2012); *see also Nu Image, Inc. v. Does 1-2515*, 2:12-CV-109-FTM-29, 2012 WL 3043098 (M.D. Fla. July 25, 2012) ("the Complaint … reflects the same generic jurisdictional allegations that the Court has previously found

---

[3] The Court in *Nu Image* issued several orders that used the same quoted language, at 2012 WL 1898624 (M.D. Fla. May 9, 2012) *report and recommendation adopted,* 2:11-CV-545-FTM-29, 2012 WL 1890632 (M.D. Fla. 2012); 2012 WL 1900574 (M.D. Fla. May 9, 2012) *report and recommendation adopted,* 2:11-CV-545-FTM-29, 2012 WL 1890829 (M.D. Fla. 2012); and 2012 WL 1890846 (M.D. Fla. May 9, 2012) *report and recommendation adopted,* 2:11-CV-545-FTM-29, 2012 WL 1890829 (M.D. Fla. 2012).

to be inadequate in the related case.")

Therefore, like the nearly identical complaint in *Nu Image, Inc.,* the instant complaint includes "vague and conclusory allegations related to the internet [which] are insufficient to satisfy a prima facie case for personal jurisdiction." *Nu Image, Inc.,* 2:11-CV-545-FTM-29, 2012 WL 1890829 *3 (M.D. Fla. May 24, 2012) (citing *Internet Solutions Corp. v. Marshall,* 611 F.3d 1368 (11th Cir. 2010)). Because both cases, which both involve Defendants outside the State of Florida, have near identical complaints, the Court should follow the Middle District of Florida's personal jurisdiction analysis in the above-cited *Nu Image* orders and quash the subpoenas*.* Furthermore, the complaint should also be dismissed, pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure.

## IV.  Doe 9 is wrongly joined and should be dropped as a party

Next, because Doe 9 is wrongfully joined in the instant lawsuit, good cause exists to drop Doe 9 as a party and protect Doe 9's identity. Joinder is appropriate **only** where:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to

all defendants will arise in the action.
Fed. R. Civ. P. 20(a)(2).  This rule is designed "to promote trial convenience and expedite the resolution of lawsuits, thereby eliminating unnecessary lawsuits." *Aerosoft GmbH v. John Does 1-50*, 12-21489-CIV, 2012 WL 5272270 (S.D. Fla. Oct. 23, 2012).  The Court may "drop a party" or "sever any claim against a party" if it finds misjoinder. Fed. R. Civ. P. 21(b).

Joinder, a serious and common issue among these mass-Doe ("copyright troll") cases, was recently discussed in detail by the Southern District of Florida, in *Aerosoft GmbH*, 2012 WL 5272270 (severing all but Doe 1), as well as by the District of Massachusetts, in *Third Degree Films v. Does 1-47*, 12-10761-WGY, 2012 WL 4498911 (Oct. 2, 2012) (severing all but Doe 1 "after a careful weighing of the balance of potential injustices in this case and like cases").

The Southern District of Florida found that motions to sever filed by John Does identified only by their I.P. addresses were "not premature" to decide. *Aerosoft GmbH v. John Does 1-50*, 12-21489-CIV, 2012 WL 5272270 *4 (S.D. Fla. 2012). This finding is important because a common argument made by mass-doe Plaintiffs is that the issue is premature.  However, this argument is "specious." *Id*.  In fact, failing to address this joinder problem now – early in the proceedings – "raises

significant fairness concerns." *CineTel Films, Inc.*, 2012 WL 1142272. First, the inevitably numerous and differing facts and defenses will have the result of causing immense prejudice to the improperly joined defendants. *E.g.*, *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 233 (M.D. Tenn. 2001) ("If joined in one action, hundreds of Defendants will be subject to an overwhelming onslaught of materials and information unrelated to the specific claims against them – all of which they must pay their attorney to review."). Additionally, continued joinder will cause an enormous strain on judicial economy. *See, e.g.*, *Digital Sins, Inc. v. Does 1-245*, 11-cv-8170(CM), 2012 WL 1744838 (S.D.N.Y. May 15, 2012) ("There are no litigation economies to be gained from trying what are in essence [581] different cases together, because each of the John Does is likely to have some individual defense to assert.").

In this case, joinder is improper because the claims against the 581 anonymous Does do not arise "out of the same transaction, occurrence, or series of transactions or occurrences" as required by Rule 20(a)(2). Rather, "what we have here is . . . [581] separate and discrete transactions in which . . . [581] individuals used the same method to access a file via the Internet — no concerted action whatever, and no

series of related occurrences — at least, **not** related in any way except the method that was allegedly used to violate the law." *Digital Sins, Inc. v. Does 1-245*, 2012 WL 1744838 (S.D.N.Y. May 15, 2012).

Plaintiff's theory, "swarm joinder," alleges that the unidentified Doe Defendants simultaneously uploaded and downloaded a protected work. *E.g.*, *Raw Films, Inc. v. Does 1-32*, 1:11-CV-2939-TWT, 2011 WL 6840590 (N.D. Ga. 2011). The Southern District recently explained why this theory fails:

> The Doe Defendants' decision to obtain the BitTorrent protocol and download the same video **does not in and of itself constitute the same transaction, occurrence, or series of transactions or occurrences**. This is because the BitTorrent protocol facilitates the transactions between users, and much of the BitTorrent protocol operates invisibly to the user – after downloading a file, subsequent uploading takes place automatically if the user fails to close the program. As such, the users themselves are not choosing to engage in file sharing with other particular users; rather, the BitTorrent protocol is determining which users to connect to in order to obtain the additional pieces of a file. Thus, users are doing nothing more than initiating the file

sharing process by obtaining the BitTorrent protocol and selecting a file for downloading. In fact, users can walk away from their computers and as long as the computer is still on, the filing sharing process continues for an indefinite period of time among an undefined number of users. Therefore, aside from downloading the same Video using BitTorrent protocol, **there is nothing that connects all of the Doe Defendants to each other.**

*Bubble Gum Prod., LLC v. Does 1-80*, 12-20367-CLV-SE1tZ, 2012 WL 2953309 *3 (S.D. Fla. July 19, 2012) (internal citations and quotations marked omitted; emphasis added).[4]  In another case,

---

[4] *See also Sunlust Pictures, LLC v. Does 1-120,* Case No. 12-20920, DE-26 (S.D. Fla. July 24, 2012); *West Coast Productions, Inc. v. Swarm Sharing Hash Files*, 6:12-cv-1713, 2012 WL 3560809 (W.D. La. Aug. 16, 2012); *Malibu Media, LLC v. John Does 1-23*, 2012 WL 1999640, *4 (E.D. Va. May 30, 2012) (finding that, in a file sharing case, "a plaintiff must allege facts that permit the court at least to infer some actual, concerted exchange of data between those defendants"); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672, 675 (S.D. Fla. 2011) (finding mass "John Doe" joinder inappropriate); *Raw Films, Inc.*, 1:11-CV-2939-TWT, 2011 WL 6840590 ("Downloading a work as part of a swarm does not constitute 'acting in concert' with one another, particularly when the transactions happen over a long period."); *Pacific Century Int'l Ltd. v. Does 1-101*, No. C-11-02533, 2011 U.S. Dist. LEXIS 124518 (N.D. Cal.) ("That BitTorrent users have downloaded the same copyrighted work does not . . . evidence that they have acted together to obtain it."); *Digital Sins, Inc. v. Does 1-245*, 2012 WL 1744838 (S.D.N.Y. May 15, 2012) ("The bare fact that Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they [sic] were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world"); *Patrick Collins, Inc. v. Does 1-23*, 2012 WL 1144198 (D. Md. April 4, 2012) ("the Doe defendants' separate and distinct actions did not constitute 'the same transaction, occurrence or series of transactions or occurrences'"); *Patrick Collins, Inc. v. John Does 1-23*, 11-cv-15231, 2012 WL 1019034 (E.D. Mich. Mar. 26, 2012) ("simply alleging the use of BitTorrent technology . . . does not comport with the requirements under Rule 20(a) for permissive joinder").

the Southern District of Florida analogized the swarm joinder theory with "arguing that all bank depositors acted together in the same transaction in the flow of money into the bank," which theory would be wholly impracticable and unrealistic. *Aerosoft GmbH*, 12-21489-CIV, 2012 WL 5272270 *5.

The instant case involves 581 different alleged downloads, each occurring at a different time, each from a different location or I.P. address. Thus, even taking the allegations of the complaint as true, the 581 Defendants could not have possibly participated in the same transaction, occurrence, or series of transactions or occurrences. *See Patrick Collins, Inc. v. Does 1-16,* 6:12-cv-477-ACC-KRS, Order to Show Cause [Doc. 7, Page ID 93] (M.D. Fla. Apr. 5, 2012) (finding Doe defendants to have "not act[ed] in concert and not engaged in the same series of transactions or occurrences"); *LaFace Records, LLC v. Does 1-38*, 2008 WL 544992 *7 (E.D.N.C. 2008) ("merely committing the same type of violation in the same way does not link defendants together for purposes of joinder").

Another reason swarm joinder fails is "the reality is that each claim against each Doe involves different facts and defenses." *Third Degree Films v. Does 1-108*, Civ. No. PJM 12-1298, 2012 WL 1514807 (D.Md. Apr. 27, 2012) (quoting *CineTel Films, Inc. v. Does 1-1052*, _F. Supp.2d._, 2012 WL 1142272 *5

(D.Md. Apr. 4, 2012)).  "[D]ue to the imprecise manner in which the Plaintiff identifies alleged infringers, namely by IP addresses, defendants can assert an unquantifiable number of different factual scenarios to establish that they did not download the copyrighted work." *Bubble Gum Productions*, 12-20367-CLV-SE1TZ, 2012 WL 2953309 (citing *In re Bittorrent Adult Film Copyright Infringement Cases,* 2012 WL 1570765 at *5, 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012)).  Furthermore, a substantial number of innocent persons, such as Doe 9, are forced to incur the burden of defending these suits at their own expense. *E.g., BMG Music v. Does 1-203*, 2004 WL 953888 *1 (E.D. Pa. 2004) (one Doe "could be an innocent parent whose internet access was abused by her minor child," while another Doe "might share a computer with a roommate who infringed Plaintiffs' works.").

Furthermore, it is "patently unfair to permit Plaintiff to receive a windfall . . . without paying more than a one-time filing fee." *Third Degree Films*, 2012 WL 1514807; *see also Pac. Century Int'l v. Does 1-37*, 2012 WL 1072312, at *11 n.15 (N.D. Ill. Mar. 30, 2012) (swarm joinder tactics "deny the federal courts additional revenue from filing fees in the suits that should be filed to obtain the information the plaintiffs desire"); *In Re BitTorrent Adult Film Copyright Infringement*

*Cases*, No. 2:11-cv-03995, 2012 WL 1570765, *22-23 (E.D.N.Y. May 1, 2012) (recognizing "lost revenue of perhaps millions of dollars (from lost filing fees)"). Here, Plaintiff paid a single $350 filing fee. **Had Plaintiff filed 581 separate actions, it would have paid, and the Northern District of Florida would have received, $203,350.00 in filing fees.**

In summary, Plaintiff has not established that the Doe Defendants participated in the same "transaction" or "occurrence" within the meaning of Rule 20, and continued joinder would prejudice the Defendants, strain judicial resources, and be patently unfair. Therefore, the Court should reconsider its Order granting leave to Plaintiff to serve its subpoenas on all 581 Defendants, and sever the case, dismissing Doe Nos. 2-581. Furthermore, because Doe 9 has been improperly joined, and Doe 9's identity is not relevant in this particular case, the subpoena should be quashed a protective order should be entered to prevent further release of Doe 9's information. Information sought in discovery "must be relevant . . . and tailored to the issues involved *in the particular case*"[5] – not

---

[5] *Rosenbaum v. Becker & Poliakoff, P.A.*, 08-CV-81004, 2010 WL 623699 (S.D. Fla. 2010) (emphasis added) (citing *Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1570 (11th Cir. 1992)); *see also Syposs v. United States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998) ("the reach of a subpoena issued pursuant to [Rule 45] is subject to the general relevancy standard applicable to discovery under [Rule 26(b)(1)]").

a potential future case.  Thus, even though Plaintiff may allege it has a claim against Doe 9, such allegation does not belong **in this particular case**.

Therefore, Doe 9 requests that this Court drop Doe 9 as a party, or sever the action and dismiss all but Doe 1. Additionally, Doe 9 asks that this Court quash the subpoena and enter a protective order preventing the release of Doe 9's data.

## V.   The Court should reconsider its order (Doc. 6)

As explained above, this is not your standard, garden-variety lawsuit.  Plaintiff and similar mass-Doe plaintiffs have developed a pattern of: (A) File lawsuit against anonymous Does, (B) Obtain subscriber information, and (C) Dismiss lawsuit.  These cases are not designed for, and do not reach, trial or even summary judgment.  In fact, "[t]his litigation strategy raises questions of whether this film was produced for commercial purposes or for purposes of generating litigation and settlements." *Media Products, Inc. DBA Devil's Film v. Does 1-26,* 1:12-cv-03719-HB [Doc. 9 at 4] (S.D.N.Y. Sept. 4, 2012) (quoting *On The Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500, 504 n.6 (N.D. Cal. 2011) (brackets removed)).

One of the elements to show whether good cause for early discovery exists is the "absence of alternative means to obtain

the subpoenaed information." Doc. 6 at 3 (citations omitted). The court's conclusion that "there is no alternative means" by which Plaintiff can obtain Defendants' contact information (Doc. 6 at 4) is, respectfully, incorrect because, procedurally, Plaintiff **has** other means, which is to file 581 separate lawsuits against the John Does individually rather than collectively, **in the correct jurisdictions** for each IP address, and by filing a separate motion for leave to obtain early discovery in each case.

Additionally, if Plaintiff were able to show good cause to obtain for subscriber information to defend its copyright, such cause would apply to only "**some** of the expedited discovery requested, but not all of it." *Malibu Media, LLC*, 2:12-cv-1514-LKK-EFB, 2012 U.S. Dist. LEXIS 96333, at *10.  In other words, if good cause exists, it would exists only as to Doe 1, not the other Defendants who have been improperly joined. *Id*. at *11.

Also required to obtain leave to serve early discovery is a prima facie copyright infringement claim.  However, because (a) the nature of the underlying work is obscene and (b) Plaintiff has shown a litigation history, as recognized by other courts, of potentially abusing the Court system, Plaintiff should, at a very minimum, be held to a higher standard in showing that the alleged works meet the minimum

standards of originality to be copyrightable before the court grants an ex parte motion for early discovery.  "[I]f the Motion Picture is considered obscene, it may not be eligible for copyright protection." *Next Phase Dist., Inc. v. Does 1-27*, 1:12-cv-03755-VM, 2012 U.S. Dist. LEXIS 107648 *16 (citing *Liberty Media Holdings, LLC v. Swarm Sharing Hash File and Does 1-38*, 821 F. Supp.2d 444, 447 n.2 (D. Mass. 2011); *see also Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986) (stating that obscene works may be precluding from copyright protections). The Copyright Act extends *only* to promote the progress of science and useful arts, U.S. Const., art. I, § 8, cl. 8, and "obscene material is not protected by the First Amendment." *United States v. 12 200-Foot Reels of Super 8mm. Film*, 413 U.S. 123, 126 (1973) (citing *Roth v. United States*, 354 U.S. 476, 485 (1957)) (other citations omitted).  "Congress intended to incentivize the creation of useful arts by providing a statutory right and a means of enforcement that would reward authors for their labors, hardly the Plaintiffs' strategy here." *Media Products, Inc. DBA Devil's Film v. Does 1-26*, 1:12-cv-03719-HB [Doc. 9 at 4] (citing *Raw Films, Inc. v. John Does 1-32*, 2011 WL 6840590, at *2 n.5 (N.D. Ga.)).  Thus, in this case, mere registration of copyright of an obscene film does not show whether the alleged work is sufficiently

copyrightable.

Therefore, the Court should reconsider its order because: (a) Plaintiff **has** other means of obtaining the information, which is by filing 32 individual actions; and (b) Plaintiff has not shown sufficient originality for copyrightability of an obscene film.

## VI.  Plaintiff does not seek Doe 9's subscriber information for actual litigation.

Finally, the request for Doe 9's identifying information is not relevant to the instant litigation because it is not for use in the litigation.  Information sought in discovery "must be relevant, not overly burdensome to the responding party, and tailored to the issues involved in the particular case." *Rosenbaum v. Becker & Poliakoff, P.A.*, 08-CV-81004, 2010 WL 623699 (S.D. Fla. 2010) (citing *Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1570 (11th Cir. 1992)); *see also Syposs v. United States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998) ("the reach of a subpoena issued pursuant to [Rule 45] is subject to the general relevancy standard applicable to discovery under [Rule 26(b)(1)]").  Where a subpoena's primary purpose is not to obtain information for use in the litigation but rather to extract money from numerous individuals, many of whom are not even subject to jurisdiction

or venue in this Court, the subpoena is overbroad, irrelevant, and any request to identify such individuals is an "undue burden." *See Oppenheimer Fund, Inc.*, 437 U.S. 340, 352 n.17 (1978) ("when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied"); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (pre-Rule 26 discovery should be denied where it "would not uncover [the defendants'] identities, or that the complaint would be dismissed on other grounds").[6]  Furthermore, where a subpoena is issued prior to a Rule 26(f) conference, the relevancy of the sought discovery should be even more narrowly tailored.

The actual and recognized purpose of these mass actions filed by pornographic film companies is to "identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement." *Third Degree Films*, 2012 WL 1514807 (adding that such purpose "is not what the joinder rules were established for").

As one court explained, "[t]he federal courts are not cogs in a plaintiff's copyright-enforcement business model.  The

---

[6] *See also Pacific Century Int'l, Ltd. v. Does 1-37*, 2012 WL 1072312 (N.D. Ill. March 30, 2012); *Premer v. Corestaff Services, L.P.*, 232 F.R.D. 692, 693 (M.D. Fla. 2005); *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005).

Court will not idly watch **what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial.**" *Malibu Media LLC v. Does*, No. 2:12-cv-3623, 2012 U.S. Dist. LEXIS 89286, at *8-9 (C.D. Cal. June 27, 2012) (emphasis added).   Cases like the instant one are merely "a strong tool for leveraging settlements – a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers." *MCGIP, LLC v. Doe*, 4:2011cv02331, 2011 WL 4352110, at *4 n.5 (N.D. Cal. Sept. 16, 2011) ("the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle").   In these mass-Doe cases, "plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them." *K-Beech, Inc. v. Does 1-85*, 3:11cv469, 2011 U.S. Dist. LEXIS 124581 *6 (E.D. Va.); *SBO Pictures*, 2011 WL 6002620, at *3 (defendants "whether guilty of copyright infringement or not – would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded.   This creates great potential for a coercive and unjust 'settlement'").

"The plaintiffs seemingly have **no interest in actually litigating the cases**, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does." *Raw Films, Ltd. v. Does 1-32*, 2011 WL 6182025 *3 (E.D. Va. 2011) (emphasis added) (adding that "the plaintiff should be required to show cause why certain conduct does not violate Rule 11."). *See also Lightspeed v. Does 1-1000*, No. 10 C 5604, 2011 US Dist. LEXIS 35392 (N.D. Ill. Mar. 31, 2011). "[A]lmost all" these cases "end in settlement and few, if any, are resolved on their merits." *Third Degree Films v. Does 1-108*, 8:11-cv-3007-DKC [Doc. 40 at 10], 2012 WL 1514807 (D. Md. Apr. 27, 2012).

Furthermore, the link between the John Doe Defendants and the actual infringers is tenuous, as the alleged infringer can be anyone. In a very similar case, also by a pornographer, a court observed, based on the Plaintiff's own admission, that as many as "30% of the names turned over by ISPs **are not** those of individuals who actually downloaded or shared copyrighted material." *Digital Sin, Inc. v. Does 1-176,* 2012 WL 263491 *3 (S.D.N.Y. Jan. 30, 2012) (emphasis added). An IP address is not a person or entity. An IP address, being vastly far from a fingerprint or DNA evidence, can only identify the person who is merely paying the bill for, and may not even reside at the

location of, the Internet connection allegedly used by the infringer. *See, e.g.*, *VPR Internationale v. Does 1-1017*, No. 11-2068, 2011 U.S. Dist. LEXIS 64656, at *3 (the infringer could be "someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment"). Doe 9's identity would therefore be futile in proving a case against a copyright infringer – who could be practically anyone. Therefore, the balance of Doe 9's right to privacy far outweighs the relevance of Doe 9's identity to this litigation. *See Malibu Media, LLC v. Does 1-7*, 2:12-cv-1514-LKK-EFB, 2012 U.S. Dist. LEXIS 96333 *3 (E.D. Cal. July 10, 2012) (citing *UMG Recording, Inc. v.* Doe, 2008 WL 4104214, at *4 (N.D. Cal. 2008) *and Sony Music Entertainment v. Does 1-40*, 326 F. Supp. 556, 564-565 (S.D.N.Y. 2004)).

"A court 'for good cause shown ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) (quoting Fed. R. Civ. P. 26(c) and adding that a district court has "discretionary power to fashion a protective order"). Thus, as disclosure of Doe 9's identity would clearly subject Doe 9 to the embarrassment of being associated with a pornographic film; the harassment of multiple

settlement demands from Plaintiff; and the undue expenses and burden to fend off said demands, a protective order is proper. Therefore, the subpoena must be quashed and a protective order entered as to Doe 9. Also, as Doe 9 has incurred unnecessary attorney fees in filing this motion, Doe 9 should be compensated for same in doing so.

## CONCLUSION

For the forgoing reasons, the subpoena for Doe 9's records should be quashed, a protective order should be entered, and the complaint dismissed. Furthermore, Doe 9 asks that this Court reconsider its order granting Plaintiff leave to issue a subpoena seeking the identity of all 581 Does.

WHEREFORE, Defendant "Doe 9" respectfully requests that this Honorable Court enter an Order GRANTING this Motion and:

1.  QUASHING the subpoena as to "Doe 9";

2.  RECONSIDERING its Order (Doc. 6) granting Plaintiff leave to serve third-party subpoenas;

3.  ENTERING a PROTECTIVE ORDER preventing the release of Doe 9's subscriber information and AWARDING Doe 9 his or her reasonable attorney fees incurred in filing this Motion, pursuant to Rules 26(c)(3) and 37(a)(5);

4.  DROPPING Doe 9 as a party for improper joinder, or in the alternative, SEVERING this action and DISMISSING all but the first Defendant from this case; and

5.  DISMISSING the complaint or the claims against Doe 9, for want of personal jurisdiction.

## RULE 26(c)(1) and 7.1(B) CERTIFICATE OF GOOD-FAITH COUNSEL

I, the undersigned, hereby certify that, on November 5, 2012, in a good-faith effort to resolve the issued raised herein, I telephoned the office of Plaintiff's attorney and conferred with Doug Blecki, Esq., who said that the Plaintiff would be opposed to all of the relief requested herein.

/s/ Cynthia Conlin, Esq.
CYNTHIA CONLIN, ESQ.
Florida Bar No. 47012

## CERTIFICATE OF SERVICE

I hereby certify that I filed electronically the foregoing with the Clerk of the Court via CM/ECF system which will notify electronically all parties.

*Attorney for Doe 9:*

**Cynthia Conlin, P.A.**
1643 Hillcrest Street
Orlando, Florida 32803
Tel 407-965-5519
Fax 407-545-4397
www.cynthiaconlin.com

/s/ Cynthia Conlin, Esq.
CYNTHIA CONLIN, ESQ.
Florida Bar No. 47012
cynthiaconlin@cynthiaconlin.com